Kristin J. Moody (SBN 206326)
A. Chowning Poppler (SBN 272870)
**BERMAN DEVALERIO**
One California Street, Suite 900
San Francisco, CA 94111
Telephone: (415) 433-3200
Facsimile: (415) 433-6382
Email: kmoody@bermandevalerio.com
       cpoppler@bermandevalerio.com

*Local Counsel for Plaintiff and the Class*

(*Additional Counsel on Signature Page*)

# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CYNTHIA A. JAMISON, on behalf of herself and all others similarly situated,<br><br>                              Plaintiff,<br><br>           v.<br><br>BANK OF AMERICA, N.A.,<br><br>                              Defendant. | Civil Case No.:<br><br>**CLASS ACTION COMPLAINT ASSERTING VIOLATIONS OF TILA, CLRA, AND UCL**<br><br><u>**CLASS ACTION**</u><br><br>**DEMAND FOR JURY TRIAL** |

CLASS ACTION COMPLAINT

Plaintiff Cynthia A. Jamison, by her attorneys, on behalf of herself and the Class (as defined in the Class Allegation section below) set forth below, alleges the following upon information and belief, except for those allegations that pertain to Plaintiff, which are based on her personal knowledge:

## NATURE OF THE ACTION

1. Plaintiff brings this class action against Bank of America, N.A., (hereinafter, "Defendant," "BANA," or the "Bank") for its systematic violations of (a) the Truth in Lending Act of 1968, as amended ("TILA"), 15 U.S.C. § 1601 *et seq.*, Regulation Z, adopted pursuant to TILA, and (b) California's Consumers Legal Remedies Act, California Civil Code §1750, *et seq.* (the "CLRA"), for failing to provide homeowners with accurate statements regarding the mortgages it services.

2. Specifically, Defendant has an obligation to prepare "payoff statements" setting forth the amounts required to fully satisfy all obligations secured by the loan serviced by Defendant. These statements include information such as the outstanding principal balance, outstanding interest, amounts held in escrow, fees associated with the account, and projected interest if the amount due is paid in full by a certain date. Defendant also provides monthly periodic account statements (hereinafter, "periodic statements") that describe the loan's current status and recent activity. However, while the Bank provides detailed listings for homeowners' debts, it omits any reference to a category of funds that can be credited to the loan: proceeds from property insurance claims. These insurance proceeds—which, as in the case of Plaintiff, is nearly two thousand dollars—are held until the Bank either uses the funds to repair any property damage to the house or reduces the balance on the loan, with any excess funds paid to the appropriate party. But entries for these insurance proceeds do not appear, as they should, on either the payoff or periodic statements.

3. Defendant's failure to provide an accurate outstanding loan balance based on the best information available prejudices Plaintiff and the members of the Class. Plaintiff cannot keep track of the amounts that are still available for either repairing the home or reducing her outstanding balance. Nor can Plaintiff and the members of the Class monitor the amounts

CLASS ACTION COMPLAINT                                                                                                             1

distributed to contractors.  Because the insurance claim funds are not reflected in these official documents from the Bank, Plaintiff and the members of the Class get the run-around from Bank employees when they discuss the status of the loan, as overly cautious and under-informed Bank employees would forever resort to the statement's bottom line and inflate the true amount needed to pay off the loan.  If Plaintiff and the members of the Class were to apply for a loan modification or refinancing, if they wish to fully satisfy their loan obligation, or if the Bank attempts foreclosure, these documents would not provide third parties with an accurate view of the outstanding balance.

4. To add insult to injury, Defendant charges homeowners an improper $5.00 "Facsimile Fee" for furnishing a payoff statement even when delivery is by regular mail in violation of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq*.

## PARTIES

5. Plaintiff Cynthia A. Jamison is a citizen of the State of California, residing in Sacramento, California.

6. Defendant Bank of America, N.A. is the successor by merger, as of July 1, 2011, to BAC Home Loans Servicing, L.P ("BAC").  BAC was formerly known as Countrywide Home Loans Servicing, L.P.  Defendant is a national banking association headquartered in Charlotte, North Carolina.  It regularly conducts business in this District.

7. Defendant is a "creditor," "assignee," and "servicer" as defined by TILA and Regulation Z.  *See* 15 U.S.C. § 1602(g); 15 U.S.C. § 1641(a); 12 C.F.R. § 1026.36(c).

8. Defendant was the owner and servicer of Plaintiff's mortgage loan at all pertinent times alleged herein.

## JURISDICTION AND VENUE

9. This Court has original jurisdiction over this class action pursuant to 28 U.S.C. § 1331.

10. Venue is proper pursuant to 28 U.S.C. § 1391 because Defendant is subject to jurisdiction, and regularly conducts business in this District.

CLASS ACTION COMPLAINT                                                                              2

**THE TRUTH IN LENDING ACT ("TILA") AND REGULATION Z**

11. The purpose of TILA is, among other things, "to protect the consumer against inaccurate and unfair credit billing . . . practices." 15 U.S.C. § 1601(a).

12. As TILA is a consumer protection statute, it must be construed liberally and broadly in order to best serve Congressional intent.

13. Those bound by TILA and its implementing regulations are obligated to discharge their obligations with absolute compliance.

14. A consumer's need to be fairly apprised of her rights under a credit agreement is most acute when a lender maintains a security interest over her and her family's residence. It is against this backdrop that Congress empowered the Board of Governors of the Federal Reserve System (the "Board") to "prohibit acts or practices in connection with . . . mortgage loans that [it] finds to be unfair, deceptive, or designed to evade the provisions of this section[.]" 15 U.S.C. § 1639.

15. In connection with this authority, and in its effort to curb "abusive servicing practices[,]" the Board in 2008 proposed regulations prohibiting loan servicers "from failing to provide, within a reasonable time after receiving a request from the consumer or any person acting on behalf of the consumer, an accurate statement of the full amount required to pay the obligation in full as of a specified date." 73 Fed. Reg. 1672, 1703 (Jan. 9, 2008).

16. The Board was concerned that the growth in the residential mortgage industry encourages servicers to hide information from borrowers:

> A potential consequence of the "originate to distribute" model . . . is the misalignment of incentives between consumers, servicers, and investors. Servicers contract directly with investors, and consumers are not a party to the contract. The investor is principally concerned with maximizing returns on the mortgage loans. So long as returns are maximized, the investor may be indifferent to the fees the servicer charges the borrower. Consumers do not have the ability to shop for servicers and have no ability to change servicers (without refinancing). As a result, servicers do not compete in any direct sense for consumers. Thus, there may not be sufficient market pressure on servicers to ensure competitive practices.
>
> As a result, as described above, substantial anecdotal evidence of servicer abuse exists. For example, servicers may not timely credit, or may misapply, payments, resulting in improper late fees. . . . The Board is also concerned about the transparency of servicer fees and charges, especially because consumers may have no notices of such charges prior to their assessment. Consumers may be

CLASS ACTION COMPLAINT                                                                 3

> faced with charges that are confusing, excessive, or cannot easily be linked to a particular service. ***In addition, servicers may fail to provide payoff statements in a timely fashion, thus impeding consumers from refinancing existing loans.***

*Id.* at 1702 (emphasis added). Failing to disclose funds that are available to borrowers is the flip side of the coin to obscuring fees the servicers charge borrowers.

17. In 2010, Congress enacted the Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank"), 12 U.S.C. § 5301 *et seq.*, which established the Consumer Finance Protection Bureau ("CFPB"). As part of the Act, it amended 15 U.S.C. § 1639 to empower the CFPB, in place of the Board, to "prohibit acts or practices in connection with . . . mortgage loans that the Bureau finds to be unfair, deceptive, or designed to evade the provisions of this section[.]" 15 U.S.C. § 1639(p)(2).

18. The regulation concerning payoff statements exists today in Regulation Z:

> In connection with a consumer credit transaction secured by a consumer's dwelling, a creditor, assignee or servicer, as applicable, must provide an accurate statement of the total outstanding balance that would be required to pay the consumer's obligation in full as of a specified date.

12 C.F.R. § 1026.36(c)(3).

19. Also as part of Dodd-Frank amendments to TILA, Congress enacted Section 129G, which, in substance, codifies the requirement to provide accurate payoff statements:

> A creditor or servicer of a home loan shall send an accurate payoff balance within a reasonable time, but in no case more than 7 business days, after the receipt of a written request for such balance from or on behalf of the borrower.

15 U.S.C. § 1639g.

20. In its Official Interpretations, the CFPB states it "believes payoff statements should be issued according to the best information available at the time[.]" 78 Fed. Reg. 10902, 10958 (February 14, 2013).

21. The provision of Regulation Z, found at 12 C.F.R. § 1026.41, and entitled "Periodic statements for residential mortgage loans" also requires mortgage servicers to furnish to homeowners periodic statements. The statements must include, among other things, amounts due, explanations of amounts due, transaction activity, past payment breakdowns, any fees or

charges imposed, as well as funds *"held in any suspense or unapplied funds account."* 12 C.F.R. §§ 1026.41(d)(3)(ii) and (d)(5) (emphasis added).

22. Violators of TILA are liable, among other things, for

- any resultant actual damages (15 U.S.C. § 1640(a)(1));
- statutory damages,
  - in individual actions not less than $400 or greater than $4,000 (15 U.S.C. § 1640(a)(2)(A)(iv)),
  - in class actions, the lesser of $1 million or 1 per centum of the net worth of the creditor (15 U.S.C. § 1640(a)(2)(B)); and
- costs and attorneys' fees (15 U.S.C. § 1640(a)(3)).

## FACTUAL ALLEGATIONS

**Defendant's Rights Under the Mortgage to Administer Insurance Proceeds**

23. On or about November 19, 2009, Plaintiff took out a mortgage, secured by her residential property, located at 905 Nogales Street in Sacramento ("the Property"), for the principal amount of $175,986.00 ("the Mortgage"). The footer of the Mortgage's Deed of Trust states it is an "FHA CALIFORNIA DEED OF TRUST—MERS," which indicates that it conforms to the servicing requirements established by the United States Department of Housing and Urban Development.

24. Section Four of the Mortgage's Deed of Trust, entitled "Fire, Flood and Other Hazard Insurance," requires the Borrower to maintain property insurance, and provides that the insurance policies "shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender."

25. Section Four continues:

> All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument . . . , or (b) to the restoration or repair of the damaged Property . . . . Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

26. As the above clause makes abundantly clear, the Bank is required to use the insurance payments to either (a) reduce the Borrower's indebtedness, or (b) repair the property.

The Bank's retention of insurance payments for any other reason, or for no discernible reason whatsoever, is strictly prohibited.

27. In those circumstances where the property claim exceeds the outstanding arrearages on a loan, at least a portion of the property claim would revert to the borrower.

**Defendant Deposits Plaintiff's Insurance Payments**

28. On or about December 31, 2010, a fire broke out in the Plaintiff's residence, leaving it uninhabitable.

29. Plaintiff submitted a claim to her insurance company, USAA, which thereafter issued a series of checks jointly payable to Plaintiff, Defendant, and sometimes also to the contractor making repairs ("the Contractor").

30. On or about February 9, 2011, USAA issued loss checks in the amounts of $152,091.11; $2,741.66; and $698.27.

31. On or about July 8, 2011, USAA issued a loss check in the amount of $809.60.

32. After Plaintiff endorsed these checks and submitted them to Defendant for endorsement, Defendant cashed the loss checks and deposited the funds in an account at Defendant. The total amount deposited by Defendant was $156,340.64.

33. Defendant thereafter made a series of payments to Plaintiff's contractor in the amounts of $31,106.21; $72,477.46; and $50,756.97; totaling $154,340.64.

34. On or about March 20, 2012, the Contractor submitted a check from USAA for $38,067.86 forwarded by Bank of America and previously endorsed by it to Defendant, who endorsed it and returned the check to the Contractor.

35. However, Defendant has not disbursed all of the funds. Since 2012, Defendant has held $2,000.00 in insurance funds, which it has failed to disclose to Plaintiff.

**Plaintiff's Dispute with the Contractor and Defendant's Threats of Foreclosure**

36. In 2012, Plaintiff grew increasingly concerned about the work that the Contractor performed. The Contractor failed to provide appropriate invoices and Plaintiff questioned the quality of its work. Among other issues, the $38,067.86 check collected by the Contractor in

1 March 2012 was not supported by the contract signed with Plaintiff in February 2011 or any
2 relevant change order.

3      37.     Plaintiff seeks information from Defendant to enable her to know the details of all
4 payments made and the funds that have not been disbursed from her account.

5      38.     On or about May 2, 2013, Defendant notified Plaintiff that it considered her in
6 default of her Mortgage because of the past-due payments of $3,982.33.  Defendant threatened to
7 accelerate her Mortgage and initiate foreclosure proceedings if the default was not cured by June
8 11, 2013.  The total amount due did not reflect the unused insurance payments that plaintiff
9 could use to pay down her debt.

10      39.     On or about June 3, 2013, Defendant sent another notice to Plaintiff, now advising
11 her that "[t]he total amount needed to reinstate or to bring the account current is $5,327.01."
12 Defendant once again did not disclose that it was holding unused insurance payments that
13 plaintiff could use to pay down her debt.

14      40.     On or about July 5, 2013, Defendant provided Plaintiff with a Notice of Intent to
15 Accelerate, advising her she had to pay $6,619.98 on or before August 14, 2013, to cure her
16 default.  Defendant failed to disclose, once again, that it was retaining insurance funds and
17 therefore the amount that Defendant sought to recover was inaccurate and misleading.

18      41.     Plaintiff is currently up to date in her loan payments.

19 **Defendant's Inaccurate and Unlawful Periodic Statements**

20      42.     Defendant regularly provides monthly account statements that do not reflect the
21 existence of property insurance claim funds.

22      43.     For example, in an account statement dated January 5, 2015, Defendant alleged
23 $862.56 was due by February 1, 2015.  The statement includes an "[e]xplanation of total amount
24 due" which identifies categories such as principal due, interest due, escrow (taxes and insurance)
25 due, overdue payments, current period fees and charges, and unapplied funds to be credited to
26 the account.  The statement also provides Plaintiff's escrow balance and any recent transaction
27 activity.  Defendant's detailed breakdown of Plaintiff's account and its tallying of charges owed
28 up to the cent leaves the implication that the statement reflects a complete and accurate

CLASS ACTION COMPLAINT                                                                                                                                                    7

description of her Mortgage loan. However, nowhere in the statement is there any disclosure concerning Plaintiff's insurance proceeds that Defendant has held.

44. Defendant provided similar inadequate monthly account statements every period since then. Defendant failed to disclose its retention of insurance funds in these statements as well.

45. In fact, the property insurance claim funds are not disclosed in any of the Bank's regular statements.

**Defendants' Inaccurate and Unlawful Payoff Statement**

46. In or about March 2015, Plaintiff requested a payoff statement from Defendant.

47. Defendant provided Plaintiff a written payoff statement dated March 26, 2015 (the "2015 Payoff Statement"), in which it stated that Plaintiff was required to pay $97,883.55 by April 24, 2015, in order to release its lien on her property.

48. In the 2015 Payoff Statement, Defendant itemized as owed: $97,085.10 in principal balance, $667.46 in interest, and $140.92 in mortgage insurance premiums. Defendant itemized $.07 as Plaintiff's escrow balance.

49. Defendant provided Plaintiff via first class mail a second written payoff statement dated February 5, 2016 (the "2016 Payoff Statement"), in which it stated that Plaintiff was required to pay $95,946.08 by March 2, 2016, in order to release its lien on her property.

50. In the 2016 Payoff Statement, Defendant itemized as owed: $95,158.82 in principal balance, $654.22 in interest, and $128.04 in mortgage insurance premiums. Defendant itemized $1,255.18 as Plaintiff's escrow balance.

51. Notably, the 2016 Payoff Statement also included a "Payoff Statement via Facsimile Fee" of $5.00. Plaintiff does not even own a fax machine.

52. Plaintiff did not request a payoff statement to be sent via facsimile.

53. According to Bank of America's website:

> Payoff statement via facsimile fee (FHA only) (faxing a payoff statement) is $5*.
>
> *There is no charge for mailing the payoff statement/demand by regular U.S. mail.

Mortgage Servicing Fees, *https://www.bankofamerica.com/home-loans/mortgage-servicing-fees.go*, last visited February 26, 2016.

54. Nowhere in either of the payoff statements, however, is there any mention of the existence of $2,000 in insurance payments, which were potentially available, in whole or in part, as a credit against Plaintiff's debt.

55. The deceptive nature of this omission in the payoff statements is exacerbated by additional factors created by Defendant. The precision of the information included in the payoff statement, such as showing the principal, interest, escrow, and other fees due, with accuracy up to the cent, conveys the misleading impression that the payoff statement describes a complete and accurate picture of Plaintiff's mortgage loan. In fact, the payoff statement includes a daily calculation of the amount that would be due in the weeks before and after the expiration date of the payoff statement.

56. The payoff statements also include a summary of the upcoming expenses that will be paid out of the escrow account, including expenses such as property taxes, mortgage insurance premiums, and property insurance premiums. However, the 2016 Payoff Statement warns that the current escrow balance "may not be used as a credit toward payoff." There is no explanation, however, for the insurance funds that can be used as a credit toward payoff under the terms of the mortgage. Furthermore, while the payoff statements show the expenses of paying the premiums for property insurance, they do not show the benefits of applying the claim funds received from the policy.

57. Plaintiff's inability to properly account for the deposits and disbursements of insurance policy claim proceeds is further exacerbated by the fact that a recent loan history statement provided to Plaintiff ignores this money entirely.

## CLASS ALLEGATIONS

58. Plaintiff brings this suit as a class action on behalf of herself and on behalf of others similarly situated pursuant to Federal Rules of Civil Procedure, rules 23(a), 23(b)(2), and/or 23(b)(3). The proposed Property Insurance Class consists of:

> all borrowers that have or had mortgages owned or serviced by Defendant, on property located within the United States, (i) who are entitled to receive

> payoff or periodic statements; or (ii) who have received payoff or periodic statements from Defendant, which failed to disclose the amount of insurance proceeds held by it.

59. Plaintiff also seeks to represent a class (the "California Property Insurance Class") that consists of:

> all borrowers that have or had mortgages serviced by Defendant, on property located within the State of California, (i) who are entitled to receive payoff or periodic statements; or (ii) who have received payoff or periodic statements from Defendant, which failed to disclose the amount of insurance proceeds held by it.

60. Plaintiff also seeks to represent a class (the "Facsimile Fee Class") that consists of:

> all borrowers that have or had mortgages serviced by Defendant, on property located within the State of California, who were charged a fee for sending a payoff statement via facsimile when the payoff statement was instead distributed by first class mail.

61. The members of the Property Insurance Class, California Property Insurance Class, Facsimile Fee Class (collectively, the "Class") are so numerous that joinder is impracticable. Defendant is one of the largest mortgage servicers in the country. As of December 31, 2014, it serviced approximately 5.3 million loans, with an aggregate principal balance of $693 billion, according to its annual report filed with the Securities and Exchange Commission. There are over 900 Bank of America branches in the State of California; Defendant has retail locations in thirty eight states and operates nationwide.

62. Plaintiff's claims are typical of the claims of the entire Property Insurance Class and California Property Insurance Class because Defendant failed to account for insurance proceeds in its statements to Plaintiff. Defendant has a common course of conduct of failing to account for such funds in its statements regarding other Property Insurance Class and California Property Insurance Class members.

63. Plaintiff's claims are typical of the claims of the entire Facsimile Fee Class because Defendant inappropriately charged homeowners a fee for a service that it did not provide, and misleadingly disclosed that it would only charge this fee for providing payoff

statements via facsimile. Defendant has a common course of conduct of improperly including this charge for its payoff statements for other Facsimile Fee Class members.

64. Plaintiff will fairly and adequately represent and protect the interests of the other Class members for purposes of Fed. R. Civ. P. 23(a)(4). Plaintiff has no interests antagonistic to those of other Class members. Plaintiff is committed to the vigorous prosecution of this action and has retained counsel experienced in litigation of this nature to represent them.

65. Class certification is also appropriate under Fed. R. Civ. P. 23(b)(2) because Defendant has acted on grounds that apply generally to the Property Insurance Class, California Property Insurance Class, and the Facsimile Fee Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting each class as a whole.

66. Class certification is appropriate under Fed. R. Civ. P. 23(a) and 23(b)(3) because questions of law and fact are common and exist as to all members of the respective classes and predominate over any questions affecting only individual members of the Class, including, but not limited to:

(a) whether Defendant's practice of omitting any reference to insurance proceeds in its periodic statements violates TILA, its implementing regulations, or the CLRA;

(b) whether Defendant's practice of omitting any reference to insurance proceeds in its payoff statements violates TILA, its implementing regulations, or the CLRA;

(c) whether Defendant's practice of charging a facsimile fee when it does not issue a payoff statement by facsimile is improper and misleading given Defendant's public description of its practices;

(d) whether Defendant's practice of charging a facsimile fee when it does not issue a payoff statement by facsimile violates the UCL; and

(e) the nature and extent of any other relief that should be provided.

67. Class certification under Fed. R. Civ. P. 23(b)(3) is superior to other available methods for the fair and efficient adjudication of this controversy. Since the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it virtually impossible for the Class members to seek redress for the wrongful

conduct alleged.  Plaintiff knows of no difficulty which will be encountered in the management of this litigation which would preclude its maintenance as a class action.

68. Class members have suffered and will suffer irreparable harm and damages as a result of Defendant's wrongful conduct.

## COUNT I

**(Violation of TILA and Regulation Z arising from Defendants' Payoff Statement)**

**(on behalf of the Property Insurance Class)**

69. Plaintiff repeats the allegations in the above paragraphs as if fully set forth herein.

70. Defendant's failure to account for insurance payments in its payoff statements has the effect of overstating and exaggerating Plaintiff's obligation under the Mortgage, and thus constitutes an "[in]accurate statement of the total outstanding balance that would be required to pay the consumer's obligation in full" (12 C.F.R. § 1026.36(c)(3)) and an "[in]accurate payoff balance" (15 U.S.C. § 1639g).

71. Consequently, Defendant's payoff statement is in violation of TILA and Regulation Z.

72.  Failure to account for insurance payments in payoff statements imposes drastic consequences upon the recipient Property Insurance Class members, such as Plaintiff.

73. In many jurisdictions, and under many mortgage agreements, a servicer must demand from a homeowner that she pay off the mortgage prior to its commencement of a mortgage foreclosure proceeding.  Additionally, payoff statements often serve as *prima facie* evidence in foreclosure proceedings of the amount due.

74. Similarly, lenders rely upon payoff statements when determining whether to offer refinancing on a mortgage and/or the terms of such a refinancing agreement.  The exaggerated debt also has the potential to adversely impact the credit ratings of Plaintiff and the members of the Property Insurance Class.  Defendant's conduct has the effect of "impeding consumers from refinancing existing loans."  73 Fed. Reg. at 1702.

75.   Defendant's deceptive payoff statements enables it to commence foreclosure proceedings against Plaintiff and members of the Property Insurance Class, in which it exaggerates the amounts owed. Its failure to apprise Plaintiff and members of the Property Insurance Class of insurance payments frustrates their ability to refinance their mortgage and weakens their negotiating leverage should they wish to settle a foreclosure claim.

## COUNT II

**(Violation of Consumer Legal Remedies Act, California Civil Code § 1750 *et seq.*)**

**(on behalf of the California Property Insurance Class)**

76.   Plaintiff repeats the allegations in the above paragraphs as if fully set forth herein.

77.   The Consumer Legal Remedies Act, California Civil Code §1750, *et seq.* (the "CLRA"), provides protection for California consumers against unfair, deceptive and unlawful practices, and unconscionable commercial practices.

78.   Plaintiff and the California Property Insurance Class are "consumers" as defined by Cal. Civ. Code § 1761(d).

79.   Defendant's deceptive practice of failing to account for insurance payments in its payoff, periodic and loan history statements to Plaintiff and the California Property Insurance Class violates Cal. Civ. Code § 1770(a). For example, the practice represents that a transaction confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law. The practice also represents that the subject of a transaction has been supplied in accordance with a previous representation when it has not.

80.   Plaintiff has been harmed and has suffered an increased cost or burden due to Defendant's actions, as described in the above paragraphs.

81.   Pursuant to § 1782 of the CLRA, on or about December 24, 2015, Plaintiff mailed to Defendant a letter notifying of the particular violations of § 1770 of the CLRA and demanded that Defendant rectify the actions described above. Plaintiffs sent this notice by certified mail, return receipt requested, to Defendant's agent for service of process, who received it on December 28, 2015.

82. Defendant has not responded to Plaintiff's letter to date, nor has it rectified its complained of conduct.

83. On information and belief, Defendant's conduct alleged herein was and is fraudulent within the meaning of Cal. Civil Code §§ 3294(a) and (c)(3), and all such conduct was undertaken with the advanced authorization of officers, directors and/or authorized agents of Defendant.

84. Pursuant to § 1780(d) of the CLRA, attached hereto as Exhibit A is a declaration from Plaintiff showing that this action has been commenced in the proper forum.

## COUNT III

**(Violation of the California Unfair Competition Law,**

**Cal. Bus. & Prof. Code § 17200 *et seq.*)**

**(on behalf of the Facsimile Fee Class)**

85. Plaintiff repeats the allegations in the above paragraphs as if fully set forth herein.

86. Defendants engaged in unlawful conduct under California Business & Professions Code § 17200 *et seq.*, by charging a facsimile fee for providing a payoff statement when the payoff statement was instead sent by first class mail.

87. Defendant's conduct is unfair in that it offends established public policy or is immoral, unethical, oppressive, unscrupulous, unconscionable, or substantially injurious to Plaintiff and members of the Facsimile Fee Class. The harm arising from Defendant's conduct outweighs any legitimate benefit Defendant has derived from the conduct.

88. Defendant's misrepresentations and omissions are material and likely to mislead a reasonable consumer.

89. Plaintiff relied on Defendants' misrepresentations and omissions.

90. Plaintiff, on behalf of herself and members of the Facsimile Fee Class seeks reimbursement of fees charged by Defendant for the provision of payoff statements by facsimile when they were sent by first class mail. Additionally, Plaintiff seeks equitable and injunctive relief on behalf of herself and the Facsimile Fee Class members pursuant to Cal. Business & Professions Code § 17203.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and all members of the Class prays for relief as follows:

A. Determining that this action may proceed as a class action under Rule 23(b)(2) and (3) of the Federal Rules of Civil Procedure, appointing Plaintiff's counsel as counsel for the Class, and directing that proper notice be distributed to the Class;

B. Awarding damages, as appropriate, to each class pursuant to 15 U.S.C. § 1640, Cal. Civ. Code § 1780, and Cal. Bus. & Prof. Code § 17200 *et seq.* together with prejudgment interest;

C. Ordering the disgorgement of all sums unjustly obtained from Plaintiff and the members of the Class;

D. Ordering Defendant to make restitution to Plaintiff and the members of the Class;

E. Awarding prejudgment and post-judgment interest at the maximum legal rate;

F. Enjoining Defendant from future violations and directing Defendant (i) to include on all future payoff, periodic and loan history statements any insurance payments held by it; and (ii) to cease and desist charging "Facsimile Fees" on all future payoff statements furnished through non-facsimile methods.

G. Awarding reasonable attorneys' fees and costs, including experts' fees; and

H. Granting such other and further relief, in law or equity, as this Court may deem appropriate and just.

## JURY DEMAND

Plaintiff hereby demands a trial by jury for all matters so triable.

Dated: February 26, 2016

**BERMAN DEVALERIO**

By: *_/s/ Kristin J. Moody_*
Kristin J. Moody

A. Chowning Poppler
One California Street, Suite 900
San Francisco, CA 94111
Telephone: (415) 433-3200
Facsimile: (415) 433-6382
Email: kmoody@bermandevalerio.com
cpoppler@bermandevalerio.com

*Local Counsel for Plaintiff and the Class*

Patricia I. Avery
Matthew Insley-Pruitt
Adam J. Blander
**WOLF POPPER LLP**
845 Third Avenue, 12th Floor
New York, NY 10022
Telephone: (212) 759-4600
Facsimile: (212) 486-2093
Email: pavery@wolfpopper.com
minsley-pruitt@wolfpopper.com
ablander@wolfpopper.com

*Counsel for Plaintiff and the Class*

# EXHIBIT A

Kristin J. Moody (SBN 206326)
A. Chowning Poppler (SBN 272870)
**BERMAN DEVALERIO**
One California Street, Suite 900
San Francisco, CA 94111
Telephone:  (415) 433-3200
Facsimile:  (415) 433-6282
Email: kmoody@bermandevalerio.com
       cpoppler@bermandevalerio.com

*Local Counsel for Plaintiff and the Class*

Patricia I. Avery
Matthew Insley-Pruitt
Adam J. Blander
**WOLF POPPER LLP**
845 Third Avenue, 12th Floor
New York, NY 10022
Telephone:  (212) 759-4600
Email: pavery@wolfpopper.com
       mInsley-Pruitt@wolfpopper.com
       ablander@wolfpopper.com

*Counsel for Plaintiff and the Class*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CYNTHIA A. JAMISON, on behalf of herself and all others similarly situated,<br><br>                          Plaintiff,<br><br>          v.<br><br>BANK OF AMERICA, N.A.,<br><br>                          Defendant. | Civil Case No.:<br><br>**DECLARATION OF PLAINTIFF CNYTHIA A. JAMISON** |

I, Cynthia A. Jamison, declare and state as follows:

1. I am over the age of 18. The facts contained in this Declaration are based on my own personal knowledge. If called upon to testify, I would testify to these facts.

2. I am the plaintiff in this lawsuit, and I make this Declaration under section 1780 of the California Civil Code.

3. I am, and have at all times relevant to this lawsuit been a resident of the County of Sacramento in California.

4. Defendant Bank of America, N.A. ("Defendant") owns and services the mortgage on my home in Sacramento.

5. On or about December 24, 2015, I sent, by certified mail, return receipt requested, a letter to Defendant notifying it that its conduct relating to my mortgage violates the California Consumer Legal Remedies Act.

6. Defendant's agent for service of process received the letter on December 28, 2015. Defendant has not responded to my letter to date.

I declare under penalty of perjury under the laws of the United States and the State of California that the above is true and correct.

Executed this 25th day of February, 2016, in Sacramento, California.

*Cynthia A. Jamison*
Cynthia A. Jamison

---

DECLARATION OF PLAINTIFF CYNTHIA A. JAMISON