UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CYNTHIA A. JAMISON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BANK OF AMERICA, N.A.,<br><br>Defendant. | No. 2:16-cv-00422-KJM-AC<br><br><br>ORDER |

        Plaintiff Cynthia A. Jamison filed this putative class action against defendant Bank of America, N.A. ("BANA"), alleging BANA: (1) violated the Truth in Lending Act of 1968 ("TILA"), 15 U.S.C. § 1601 *et seq.*, TILA's implementing regulation, Regulation Z, 12 C.F.R. § 1026 *et seq.*, and the California Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 *et seq.*, by failing to disclose insurance claim proceeds in its mortgage payoff and periodic statements; and (2) violated the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*, by charging plaintiff a facsimile fee for providing a payoff statement that was delivered by mail. This matter is before the court on defendant's motion to dismiss the complaint or, alternatively, to stay the proceedings pending the Supreme Court's decision in *Spokeo, Inc. v. Robins*, which has now issued, *see* 136 S. Ct. 1540, 578 U.S. ___ (2016). ECF No. 9 ("Mot."). Plaintiff opposed the motion, ECF No. 11 ("Opp'n"), and defendant replied, ECF

No. 18 ("Reply").  The court held a hearing and initial scheduling conference on June 17, 2016; Patricia Avery, Aidan Poppler, and Matthew Insley-Pruitt appeared for plaintiff, and Amanda Groves appeared for defendant.  As explained below, the court GRANTS IN PART and DENIES IN PART defendant's motion.

I.  BACKGROUND

   A.  Procedural Background

Plaintiff filed her complaint on February 26, 2016.  ECF No. 1.  BANA filed the instant motion to dismiss on April 19, 2016.  ECF No. 9.  Defendant advances four arguments for dismissal: (1) TILA and Regulation Z do not require that mortgage payoff or periodic statements itemize insurance proceeds; (2) TILA's statute of limitations bars plaintiff's claims that arose prior to February 2, 2015; (3) the complaint fails to plead a "good" or "service" covered by the CLRA or any actual damages; and (4) the complaint pleads only conclusory allegations with respect to the UCL claim.  *See generally* Mot.  Plaintiff opposes the motion, responding that (1) BANA violated TILA's requirement that banks provide "accurate" mortgage statements; (2) plaintiff's claims are based only on statements issued by BANA within TILA's limitations period; (3) mortgage services are "services" covered by the CLRA, and the complaint alleges damages arising from plaintiff's disputes with her contractor; and (4) the complaint sufficiently states a UCL claim.  *See generally* Opp'n.

   B.  Factual Allegations and Claims

On or about November 19, 2009, plaintiff obtained a mortgage loan with a principal amount of $175,986.00, secured by a deed of trust recorded against her residential home at 905 Nogales Street, Sacramento, California ("the property").  Compl. ¶ 23, ECF No. 1; Deed of Trust ("DOT"), Def.'s Ex. A, ECF No. 9-1.[1]  BANA was the owner and servicer of the mortgage at all pertinent times.  Compl. ¶ 8.  Section four of the deed of trust requires plaintiff to maintain

---

[1] The court takes judicial notice of the deed of trust, because it is publicly recorded in the Sacramento County Recorder's office.  *See* Fed. R. Civ. P. 201(b); *Grant v. Aurora Loan Servs., Inc.*, 736 F. Supp. 2d 1257, 1264 (C.D. Cal. 2010) (collecting authority supporting judicial notice of a deed of trust and similar recorded documents).

2

property insurance and provides that, in the event of loss, payments be made directly to BANA. *Id.* ¶ 24; DOT at 3. Section four continues, "All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument . . . , or (b) to the restoration or repair of the damaged Property." Compl. ¶ 25; DOT at 3.

On or about December 31, 2010, a fire broke out in plaintiff's home, leaving it uninhabitable. Compl. ¶ 28. Plaintiff submitted a claim to her insurance company, USAA, which then issued a series of checks jointly payable to plaintiff, defendant, and the contractor making repairs to cover the loss. *Id.* ¶ 29. Plaintiff submitted the insurance checks she received, totaling $156,340.64, to defendant. *Id.* ¶ 32. Defendant thereafter made a series of payments to plaintiff's contractor totaling $154,340.64. *Id.* ¶ 33. Since 2012, defendant has held the remaining $2,000 in undisbursed insurance funds, which it has failed to disclose to plaintiff. *Id.* ¶ 35.

Defendant regularly provides monthly account statements that provide a detailed breakdown of the principal due, interest due, escrow due, overdue payments, current period fees and charges, and unapplied funds to be credited to the account, each accurate up to the cent. *Id.* ¶¶ 42–45. However, these periodic statements have not disclosed the existence of the property insurance funds or included any line item for undisbursed insurance funds. *Id.*

On March 26, 2015 and February 5, 2016, defendant issued payoff statements to plaintiff claiming to reflect the amount payable in order for defendant to release its lien on the property. *Id.* ¶¶ 47, 49. The payoff statements itemized the principal, interest, escrow, and other fees due, with accuracy up to the cent. *Id.* ¶¶ 47–50, 55–56. The statements also included a daily calculation of the amount that would be due in the weeks before and after the expiration date of the payoff statement, as well as a summary of upcoming expenses that would be paid out of the escrow account. *Id.* ¶¶ 55–56. However, as with the periodic statements, the payoff statements did not disclose the existence of the undisbursed insurance funds. *Id.* ¶ 54. In addition, the 2016 payoff statement included a "Payoff Statement via Facsimile Fee" of $5.00, even though the statement was sent by mail, and the BANA website states there is no charge for sending the

3

1  statement by mail. *Id.* ¶¶ 51–53, 86.  Plaintiff did not request the statement be sent via facsimile
2  and does not own a fax machine. *Id.* ¶¶ 51–52.

3  With respect to plaintiff's injury, the complaint alleges "Plaintiff has been harmed
4  and has suffered an increased cost or burden due to Defendant's actions . . . ." *Id.* ¶ 80.  Since
5  2012, plaintiff has been concerned that her contractor overbilled her for unperformed and
6  shoddily performed work. *Id.* ¶¶ 36–37.  Plaintiff seeks information from defendant "to enable
7  her to know the details of all payments made and the funds that have not been disbursed from her
8  account." *Id.* ¶ 37.  In addition, if class members were to apply for a loan modification or
9  refinancing, if they wished to fully satisfy their loan obligation, or if BANA attempted
10 foreclosure, the payoff statements would not provide an accurate view of the outstanding balance.
11 *Id.* ¶¶ 3, 72–75.

12 II.     LEGAL STANDARDS

13 A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) tests the
14 court's subject matter jurisdiction. *See, e.g.*, *Savage v. Glendale Union High Sch.*, 343 F.3d 1036,
15 1039–40 (9th Cir. 2003).  When a party moves to dismiss for lack of subject matter jurisdiction,
16 "the plaintiff bears the burden of demonstrating that the court has jurisdiction." *Boardman v.*
17 *Shulman*, No. 12-00639, 2012 WL 6088309, at *2 (E.D. Cal. Dec. 6, 2012), *aff'd sub nom.*
18 *Boardman v. C.I.R.*, 597 F. App'x 413 (9th Cir. 2015).  If a plaintiff lacks standing, the court
19 lacks subject matter jurisdiction under Article III of the U.S. Constitution. *Cetacean Cmty. v.*
20 *Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004).

21 Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to
22 dismiss a complaint for "failure to state a claim upon which relief can be granted."  The motion
23 may be granted only if the complaint "lacks a cognizable legal theory or sufficient facts to
24 support a cognizable legal theory." *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114,
25 1122 (9th Cir. 2013).

26 Although a complaint need contain only "a short and plain statement of the claim
27 showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), in order to survive a motion
28 to dismiss this short and plain statement "must contain sufficient factual matter . . . to 'state a

4

claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint must include something more than "an unadorned, the-defendant-unlawfully-harmed-me accusation" or "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).  Determining whether a complaint will survive a motion to dismiss for failure to state a claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.  Ultimately, the inquiry focuses on the interplay between the factual allegations of the complaint and the dispositive issues of law in the action. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

In making this context-specific evaluation, this court must construe the complaint in the light most favorable to the plaintiff and accept its factual allegations as true. *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007).  This rule does not apply to "a legal conclusion couched as a factual allegation," *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)), "allegations that contradict matters properly subject to judicial notice," *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988–89 (9th Cir. 2001), or material attached to or incorporated by reference into the complaint, *see id.*  A court's consideration of documents attached to a complaint, documents incorporated by reference in the complaint, or matters of judicial notice will not convert a motion to dismiss into a motion for summary judgment. *United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003); *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995); *cf. Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002) (noting that even though court may look beyond pleadings on motion to dismiss, generally court is limited to face of the complaint on 12(b)(6) motion).

III.     DISCUSSION

    A.     <u>TILA and Regulation Z Insurance Proceeds Claim</u>

        1.     <u>Standing</u>

After defendant filed its motion, the Supreme Court issued its decision in *Spokeo*, 136 S. Ct. 1540.  The parties agree that defendant's request to stay the proceedings pending the ruling in *Spokeo* is moot, *see* Opp'n at 15; Reply at 1, but defendant now challenges plaintiff's

1  standing under the Supreme Court's *Spokeo* decision, Reply at 1. The court may consider this
2  new argument for dismissal because it challenges the court's jurisdiction. *See Arbaugh v. Y&H*
3  *Corp.*, 546 U.S. 500, 514 (2006) (courts have an independent obligation to examine their own
4  jurisdiction). At hearing, the parties represented that the impact of *Spokeo* was fully briefed in
5  their respective opposition and reply briefs.

6            In *Spokeo*, the plaintiff alleged a website operator published inaccurate
7  information about him in violation of the Fair Credit Reporting Act of 1970 ("FCRA"), 84 Stat.
8  1127, *as amended*, 15 U.S.C. § 1681 *et seq.* 136 S. Ct. at 1544. The Ninth Circuit concluded the
9  plaintiff adequately alleged injury in fact under Article III because he alleged the operator
10 "violated *his* statutory rights," and because his claim was individualized. *Id.* (quoting 742 F.3d
11 409, 413 (9th Cir. 2014)) (emphasis in original). The Supreme Court found this analysis
12 incomplete, because "the injury-in-fact requirement requires a plaintiff to allege an injury that is
13 both concrete *and* particularized," even in the context of a statutory violation. *Id.* at 1544, 1549
14 (citation and internal quotation marks omitted) (emphasis in original).

15           To be "concrete," harm must be "real" and actually exist, but an intangible injury
16 may nevertheless satisfy the requirement of concreteness in certain circumstances. *Id.* at 1548–49
17 (providing, as an example, *Pleasant Grove City v. Summum*, 555 U.S. 460 (2009) (free speech)).
18 Although the judgment of Congress is "instructive and important, . . . Congress' role in
19 identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies
20 the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to
21 authorize that person to sue to vindicate that right." *Id.* at 1549. In the context of *Spokeo*, the
22 Court held the plaintiff could not establish his standing by alleging a bare procedural violation of
23 the FCRA, because a violation may result in no harm. *Id.* at 1550 (". . . [N]ot all inaccuracies
24 cause harm or present any material risk of harm."). The Court remanded the matter for the Ninth
25 Circuit to consider whether the plaintiff had alleged a concrete injury. *Id.* at 1545.

26           Here, BANA argues that Jamison alleges only a bare procedural violation and not
27 a "concrete" injury. Reply at 1–4. As stated above, the complaint alleges "[f]ailure to account
28 for insurance payments in payoff statements imposes drastic consequences upon [the class

1  members]," Compl. ¶ 72, because the payoff statements would not provide an accurate view of
2  the outstanding balance if the class members "were to apply for a loan modification or
3  refinancing, if they wish[ed] to fully satisfy their loan obligation, or if the Bank attempt[ed]
4  foreclosure," *id.* ¶ 3; *see id.* ¶¶ 72–75.  However, as defendant notes, the complaint does not
5  allege those circumstances ever arose: it does not, for example, allege plaintiff applied for loan
6  refinancing.  Neither does the complaint provide support for finding the risk of such
7  consequences sufficient to establish a concrete injury.  In addition, although the complaint
8  generally alleges the existence of disputes between plaintiff and her contractor, *id.* ¶¶ 32–37, it
9  does not provide factual allegations establishing any harm plaintiff suffered as a result of
10 defendant's actions.  The complaint otherwise pleads only conclusory allegations of harm that the
11 court need not accept as true, *see Twombly*, 550 U.S. at 555, such as that plaintiff "has been
12 harmed and has suffered an increased cost or burden due to Defendant's actions," Compl. ¶ 80.

13          Finally, a procedural violation of the TILA requirements for payoff statements
14 does not inherently establish concrete harm.  The cases cited by plaintiff are distinguishable.  *See*
15 Opp'n at 16 n.15.  The statutes at issue in *Public Citizen v. U.S. Department of Justice*, 491 U.S.
16 440 (1989), and *Federal Election Commission v. Akins*, 524 U.S. 11 (1998), required public
17 disclosure of certain government information; thus, the plaintiffs' inability to obtain information
18 subject to disclosure under the statutes in itself constituted a concrete injury.  *See Pub. Citizen*,
19 491 U.S. at 449; *Akins*, 524 U.S. at 21.  In contrast, the TILA provision at issue here regulates
20 only the provision of certain information on the payoff statement.  *See* 15 U.S.C. § 1639g; 12
21 C.F.R. § 1026.36(c)(3).  A procedural violation of the TILA provision may result in no concrete
22 harm if the lender provides the omitted information through other means.  *Cf. Spokeo*, 136 S. Ct.
23 at 1550 (". . . [N]ot all inaccuracies cause harm or present a material risk of harm.").  Here, the
24 complaint does not allege BANA failed or refused to ever disclose information to plaintiff about
25 her proceeds, but only that it failed to disclose such information on the payoff statements.  *See,*
26 *e.g.*, Compl. ¶ 70.

27          The complaint does not allege sufficient facts to establish a concrete injury.
28 Accordingly, the court DISMISSES plaintiff's TILA claim for lack of standing.  However, it

7

appears plaintiff could cure this defect through amendments and so leave to amend is granted if possible, given the additional analysis provided below.

### 2. Amendment of TILA Claim

#### a) Payoff Statements

Assuming without deciding that plaintiff can establish standing through amendments to the complaint, the court considers defendant's remaining arguments for dismissal of the TILA claim to determine whether granting leave to amend would nevertheless be futile. *See Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1058 (9th Cir. 2011) (a court need not grant leave to amend under Federal Rule of Civil Procedure 15(a) when amendment would be futile).

TILA was enacted "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601(a). To effectuate this remedial purpose, courts "construe the Act's provisions liberally in favor of the consumer." *Hauk v. JP Morgan Chase Bank USA*, 552 F.3d 1114, 1118 (9th Cir. 2009) (internal quotation marks and citations omitted).

The recent amendment to TILA as part of the Dodd-Frank Wall Street Reform and Consumer Protection Act (Pub. L. 111-203) provides that "[a] creditor or servicer of a home loan shall send an accurate payoff balance within a reasonable time, but in no case more than 7 business days, after the receipt of a written request for such balance from or on behalf of the borrower." 15 U.S.C. § 1639g. Similarly, Regulation Z, the Consumer Finance Protection Bureau's ("CFPB") implementation of TILA, provides that "a creditor, assignee or servicer, as applicable, must provide an accurate statement of the total outstanding balance that would be required to pay the consumer's obligation in full as of a specified date." 12 C.F.R. § 1026.36(c)(3). The CFPB has explained that "payoff statements should be issued according to the best information available at the time." 78 Fed. Reg. 10902, 10958 (Feb. 14, 2013).

Plaintiff acknowledges there is no explicit textual requirement that lenders include funds that could be applied to the borrower's balance in the payoff statement, but argues an "accurate" payoff statement based on the "best information available" should have included the undisbursed insurance proceeds. Opp'n at 5–6. The Ninth Circuit has not addressed whether TILA requires lenders to include "potential" credits in payoff statements. The only district court in this circuit to consider this issue, *McLaughlin v. Wells Fargo Bank, NA*, No. 15-02904, 2015 WL 10889993 (N.D. Cal. Oct. 29, 2015), found that the plaintiff stated a cognizable TILA claim by alleging the lender failed to disclose the existence of insurance proceeds in the payoff statement. *Id.* at *1–2. The provisions of the deed of trust governing insurance proceeds in *McLaughlin* gave the lender the same two options with respect to insurance payments as do the provisions in plaintiff's deed of trust here. *See id.* at *1. In denying the bank's motion to dismiss, the court reasoned:

> Taking either option [under the deed of trust], it is indisputable that the $16,490.35 in insurance proceeds would have been credited to plaintiff's loan balance in some way. The first option explicitly provided for this credit. As to the second option, if plaintiff wished to fully satisfy her loan by paying the amount quoted on the payoff statement, the money would clearly *not* be used for restoration or repair, as the bank would no longer have an interest in the property once the loan had been paid. Thus, based on the "best information available," as mandated by TILA, an "accurate" payoff statement should have deducted the insurance proceeds still held by the bank and at least should have added a note that the impounded funds potentially could be used for home repair in the event the loan was not paid off.
>
> . . . .
>
> The principal purpose of TILA's payoff statement provision is to provide borrowers with the exact amount that the borrower needs to pay to retire the loan based on the "best information available." Here, the best information available clearly included the existence of plaintiff's insurance proceeds. As a matter of law, the bank is wrong on this one.

*Id.* at *1–2 (emphasis in original).

The court finds the reasoning of *McLaughlin* to be persuasive and consistent with TILA's remedial purpose. As in *McLaughlin*, the best information available to BANA included the existence of the $2,000 in undisbursed insurance proceeds, which, as a practical reality, would

9

1  have been applied to plaintiff's balance if she wished to fully satisfy her loan.  As a result, an
2  "accurate" payoff statement should have disclosed the proceeds.

3  The court rejects the arguments advanced by defendant in its briefing.  First, the
4  court is not persuaded by defendant's argument that disclosing the insurance proceeds on the
5  payoff statement "would only obfuscate the actual indebtedness owed, since borrowers are not
6  entitled to apply those proceeds toward their debt," Mot. at 5.  As the court in *McLaughlin*
7  explained, the insurance proceeds would be credited to plaintiff's loan balance in some way under
8  either option.  2015 WL 10889993, at *1.  The statement should have deducted the undisbursed
9  insurance proceeds from the quoted payoff balance and at least added a note that the impounded
10  funds could be used for home repair in the event the loan was not paid off.  *Id.*

11  Second, relatedly, defendant's contention that the undisbursed insurance proceeds
12  are not available for application to the balance is incorrect.  *See* Mot. at 6–8; Reply at 6.
13  Although BANA had previously applied some of the insurance proceeds to the restoration or
14  repair of the property, *see* Compl. ¶¶ 29–34, the deed of trust allows BANA to apply "all or any
15  part of the insurance proceeds" to either option, DOT at 3.  Accordingly, BANA is not required to
16  apply the undisbursed proceeds to the restoration or repair of the property under the second
17  option.

18  Third, although defendant claims that disclosure of insurance proceeds in payoff
19  statements would lead to an "accounting nightmare for creditors," Mot. at 6, defendant does not
20  provide support for this contention.  Plaintiff responds that such communication between loan
21  servicers, contractors, and homeowners is standard industry practice.  It is not clear to the court at
22  this stage what burden the disclosure would place on loan servicers, or whether that is a matter for
23  this court to consider.

24  For the foregoing reasons, the court rejects defendant's argument that plaintiff is
25  precluded from asserting a TILA claim at this stage.

26  b)  <u>Periodic Statements and Statute of Limitations</u>

27  Defendant initially raised additional arguments that plaintiff's TILA claim cannot
28  rely on the periodic statements and that certain TILA claims are time barred.  Mot. at 8–10.  In

her opposition, plaintiff clarified that her claims under TILA are based solely on the March 26, 2015 and February 5, 2016 payoff statements, Opp'n at 9 & n.8, which fall within the applicable one-year limitations period, 15 U.S.C. § 1640(e). Defendant acknowledges these issues are now resolved. Reply at 1, 4.

### 3. Conclusion

In sum, the court finds the complaint fails to support standing to bring a TILA claim and therefore DISMISSES plaintiff's TILA claim. However, in light of the Federal Rules' policy of favoring amendments, and because amendment would not be futile, the court GRANTS plaintiff leave to amend her TILA claim.

### B. CLRA Claim

The CLRA prohibits certain "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770(a). "Goods" are defined as "tangible chattels bought or leased for use primarily for personal, family, or household purposes . . . ." *Id.* § 1761(a). "Services" are defined as "work, labor, and services for other than a commercial or business use, including services furnished in connection with the sale or repair of goods." *Id.* § 1761(b). The CLRA "shall be liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection." *Id.* § 1760.

Plaintiff's CLRA claim is based on BANA's preparation of payoff, periodic, and loan history statements as the servicer of plaintiff's mortgage loan. Compl. ¶ 79. BANA argues courts have concluded mortgage servicing does not fall under the CLRA's definition of "goods" or "services" after the California Supreme Court's decision in *Fairbanks v. Superior Court*, 46 Cal. 4th 56 (2009). Mot. at 10–12. In *Fairbanks*, the court held that life insurance is not a "tangible chattel," and therefore is not a "good" under the CLRA. 46 Cal. 4th at 61. The court further held that services ancillary to the insurance, such as helping consumers select insurance policies, maintaining the policies, and processing claims, are not "services" under the CLRA. *Id.*

11

at 65.  The court reasoned, "Using the existence of these ancillary services to bring intangible goods within the coverage of the [CLRA] would defeat the apparent legislative intent in limiting the definition of 'goods' to include only 'tangible chattels.'"  *Id.* (quoting Cal. Civ. Code § 1761(a)).

A California Court of Appeal recently extended the holding of *Fairbanks* to mortgage loans and mortgage loan servicing.  *Alborzian v. JPMorgan Chase Bank, N.A.*, 235 Cal. App. 4th 29, 33, 40 (2015) ("*Fairbanks* applies with equal force to lenders.").  Most federal district courts that have considered the issue since *Fairbanks* likewise have held that the CLRA does not apply to mortgage loan servicing.  *See Mazonas v. Nationstar Mortgage LLC*, No. 16-00660, 2016 WL 2344196, at *3–4 (N.D. Cal. May 4, 2016) (collecting cases); *but see Rex v. Chase Home Fin. LLC*, 905 F. Supp. 2d 1111, 1156–57 (C.D. Cal. 2012) (relying primarily on pre-*Fairbanks* authority).

The primary district court case to the contrary cited by plaintiff, *Turbeville v. JPMorgan Chase Bank*, No. 10-01464, 2011 WL 7163111 (C.D. Cal. Apr. 4, 2011), relies on pre-*Fairbanks* authorities and does not address *Fairbanks*.  *Id.* at *6–7; *see also Hernandez v. Sutter W. Capital*, No. 09-3658, 2010 WL 539133, at *4 (N.D. Cal. Feb. 8, 2010) (same).  Moreover, the reasoning of this line of cases is inconsistent with that of *Fairbanks*.  As the court in *Mazonas* explains, if the customer services provided by insurance agents are not "services" under the CLRA, the same must be true of mortgage services, which involve a similar type and amount of contact with customers.  2016 WL 2344196, at *4 (rejecting the reasoning of *Rex*, 905 F. Supp. 2d 1111, and instead following *Alborzian*, 235 Cal. App. 4th 29); *see also Benedict v. Wells Fargo Bank, N.A.*, No. 14-0770, 2014 WL 2957753, at *3 (C.D. Cal. June 30, 2014) ("[T]he Court cannot reconcile Plaintiff's arguments concerning loan modification with *Fairbanks*' reasoning, and other courts haven't been able to either." (citations omitted)).

Here, the court agrees with the California Court of Appeal decision in *Alborzian* and the majority of district court cases and concludes defendant's mortgage services do not fall within the coverage of the CLRA.  Accordingly, the court GRANTS defendant's motion to

dismiss the CLRA claim. Because amendment would be futile, the claim is dismissed without leave to amend. *See Cafasso*, 637 F.3d at 1058.

      C.      <u>UCL Facsimile Fee Claim</u>

The UCL prohibits unfair competition, which is defined as any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. The statute's language has been construed as prohibiting three distinct types of practices: (1) unlawful acts or practices; (2) unfair acts or practices; and (3) fraudulent acts or practices. *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999). Here, plaintiff contends defendant violated all three prongs of the UCL by charging a "Payoff Statement via Facsimile Fee" of $5.00 for her 2016 payoff statement, even though she did not request the statement be sent via facsimile and does not own a fax machine. Compl. ¶¶ 51–52, 86–90.

To allege a claim under the "unlawful" prong, a plaintiff must show a violation of some independent law. *See Farmers Ins. Exch. v. Superior Court*, 2 Cal. 4th 377, 383 (1992). The predicate violation may be federal, state, local, or common law. *Id.* (section 17200 "borrows" violations of other laws and treats them as unlawful practices actionable separately under section 17200).

Here, plaintiff has alleged a predicate violation of Regulation Z. Regulation Z generally prohibits servicers from charging a fee for providing a consumer with a payoff statement. 12 C.F.R. § 1026.34(a)(9)(i). Although Regulation Z allows a servicer to charge a processing fee to cover the cost of providing a payoff statement by fax or courier, it requires the servicer to make the statement available by a method other than by fax or courier and without charge. *Id.* § 1026.34(a)(9)(ii). Plaintiff's allegation that BANA charged a $5.00 fee, in effect for providing the February 5, 2016 payoff statement by mail, shows a violation of Regulation Z, and therefore states a claim under the "unlawful" prong of the UCL. Contrary to defendant's assertion, the pleading standards do not require plaintiff to affirmatively plead that the payoff statement was not requested by a third party, such as an escrow company, on plaintiff's behalf. *See* Reply at 9–10. Rather, defendant may assert that the payoff statement was requested by a third party as a defense.

Having found plaintiff adequately alleged a claim under the "unlawful" prong, the court need not reach the other two prongs of the UCL. The court DENIES defendant's motion to dismiss plaintiff's UCL claim.

IV.     CONCLUSION

For the foregoing reasons, the court GRANTS IN PART and DENIES IN PART defendant's motion to dismiss, as follows:

The court GRANTS defendant's motion to dismiss plaintiff's TILA claim for lack of standing with leave to amend. The court GRANTS defendant's motion to dismiss plaintiff's CLRA claim without leave to amend. The court DENIES defendant's motion to dismiss plaintiff's UCL claim. The court DENIES as moot defendant's request for a stay.

An amended complaint, if any, shall be filed within twenty-one (21) days of the issuance of this order

IT IS SO ORDERED.

DATED: July 6, 2016.

_____
UNITED STATES DISTRICT JUDGE